961 F.2d 1578
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
PATEX EXIM, INC., Plaintiff-Appellant,
v.
Jerry JOHNSON, Diane Sirna, and Johnson & Sirna Corp.,
Defendants-Appellees.
 No. 91-3671.
 United States Court of Appeals, Sixth Circuit.
 May 1, 1992.
 
 Before KEITH and MILBURN, Circuit Judges, and ENSLEN, District Judge.*
 PER CURIAM:
 
 
 1
 Plaintiff, Patex Exim, Inc. ("Patex"), appeals the judgment of Magistrate Judge Michael R. Merz, who was granted jurisdiction to hear this case under 28 U.S.C. § 636(c) upon the unanimous consent of the parties. Following a two day trial, the trial court ruled in favor of defendants. This timely appeal followed. Plaintiff claims on appeal that the trial court made several erroneous factual determinations regarding an alleged partnership between the parties. For the following reasons, we AFFIRM the judgment of the trial court.
 
 I.
 
 2
 Patex is an Ohio corporation whose president is Mehmet Panayirci ("Panayirci"). Defendants Jerry Johnson ("Johnson") and Diane Sirna ("Sirna"), residents of New York, formed a New York corporation, Johnson & Sirna Corporation ("Johnson & Sirna," also a defendant), to enter into a business venture with plaintiff for the import and sale of textile goods from Turkey. Plaintiff and defendants began discussing the possible joint venture in 1988. The parties anticipated that Panayirci would contribute his knowledge of Turkish suppliers of terry cloth robes and defendants would contribute their experience in the design, merchandising and sale of women's intimate apparel. The parties agreed to form a partnership to carry out the venture.
 
 
 3
 By late spring or early summer 1988, the parties had not yet entered into a formal agreement to create a partnership. In July 1988, the parties selected the location of a showroom for their goods in New York City. The trial court found that Panayirci participated in this selection. Also in July, defendant Johnson prepared a Letter of Intent expressing the parties agreement to form a partnership to be called Amotex Associates ("Amotex"). The letter provided for the showroom in New York City, capital contributions by each of the parties, draws for defendants, a factory to be built in Turkey, and prompt preparation of a formal contractual agreement. Panayirci reviewed the draft letter and made slight modifications on it, but the parties did not execute the draft.
 
 
 4
 Amotex opened for business on August 1, 1988, in the New York showroom. On August 16, 1988, Panayirci, on behalf of Patex, and Johnson, on behalf of Johnson & Sirna, signed a Business Certificate for Partners, acknowledging that the parties were doing business as partners in Amotex. The certificate was filed with the appropriate New York authorities on that same date. By this time, the parties had also reduced the terms and conditions of their partnership agreement to writing in long-hand.
 
 
 5
 Panayirci had his attorney prepare a draft partnership agreement in early September, but the parties were not satisfied with the draft. Finally, on January 1, 1989, Panayirci signed a draft satisfactory to him and sent it to Johnson. Johnson signed the draft in duplicate on January 5, 1989, in Sirna's presence, and Sirna returned a copy to Panayirci.
 
 
 6
 Thereafter, Amotex accepted robes to sell on consignment from Tumteks, the Turkish corporation with which Panayirci had contact, on two occasions. Amotex received the goods and sold them to various customers. Despite the partnership agreement requiring each of the parties to make capital contributions to the partnership, Johnson alone financed the operations by Amotex through his personal checking account. Johnson treated these payments as loans to the partnership.
 
 
 7
 By early 1989, defendants had successfully negotiated for the sale of goods by Amotex to several large retailers, including Target and K-Mart stores, producing orders for $3.1 million. These sales were to be financed through letters of credit. Tumteks ostensibly found the letters of credit unsatisfactory as of May 1989 and refused to produce the Target and K-Mart store orders. Defendants contend, and the trial court found, that the actual reason for Tumteks refusal to fill the Target and K-Mart orders was that plaintiff had withdrawn from the partnership in early May 1989. As a result of Amotex's inability to fill its orders, it was forced to wind up its business in May 1989.
 
 II.
 
 8
 On appeal, plaintiff challenges the trial court's judgment on the basis of its factual findings. Our review of a trial court's factual findings is limited to determining whether the findings are clearly erroneous. Sterling v. Velsicol Chemical Corp., 855 F.2d 1188, 1198 (6th Cir.1988). The disputed findings of the trial court that support its ruling are addressed below.
 
 
 9
 A. Amotex was a partnership formed in August 1988.
 
 
 10
 Plaintiff contends that the partnership between Patex and Johnson & Sirna was entered into on January 1989, rather than August 1988 as found by the trial court. The issue is whether the acts by the parties in August 1988 were sufficient to form a partnership.
 
 
 11
 It is undisputed that the law of New York applies in this case. New York law provides that an executed written partnership agreement is the best evidence of the existence of a partnership. A partnership agreement need not be in writing, however, and the intentions of the parties to form a partnership may be inferred from their actions. Cohen v. Biernoff, 444 N.Y.S.2d 152, 153 (1981).
 
 
 12
 Plaintiff argues in support of its claim that the partnership did not come into existence until January 1989 that Johnson's tax return for 1988 treated Amotex as a sole proprietorship and the returns for Amotex reflected no assets, expenses or profits during that year. Moreover, the parties did not execute a partnership agreement until January 1989. Accordingly, plaintiff contends that the trial court's finding of a partnership prior to January 1989 was erroneous.
 
 
 13
 In making its determination that the partnership existed in August 1988, the trial court looked at the parties' intent to create a partnership as evidenced by documents prepared by the parties in July and August 1988. In July 1988, the parties drafted, but did not execute, a Letter of Intent to create the partnership. The parties did execute and file the Business Certificate of Partners in August 1988. By August, the parties had also produced a tentative written partnership agreement.
 
 
 14
 Although plaintiff and defendants did not formally execute the partnership agreement until January 1989, their intent to form a partnership prior to that date may be inferred from their preparation of those documents in July and August 1988. Moreover, as found by the trial court, the parties conducted business pursuant to their agreement to form the partnership by locating a site and opening Amotex for business at that site in August 1988. Accordingly, the trial court's finding that the parties intended to create a partnership at least as of August 16, 1989, when the Business Certificate of Partners was executed and filed, is not clearly erroneous.
 
 
 15
 B. Plaintiff, but not defendants, breached the partnership agreement by its failure to make a capital contribution to the partnership.
 
 
 16
 The trial court found that plaintiff's failure to make a capital contribution to Amotex was a breach of the partnership agreement. Moreover, the trial court found that defendants' obligation to make capital contributions to the partnership was satisfied by Johnson's payment of the partnership expenses.
 
 
 17
 Plaintiff counters that neither it nor the defendants made a capital contribution to the partnership as agreed. Plaintiff contends that Johnson's payments of partnership debts were in the form of loans and these loans may not be treated as capital contributions. Plaintiff points to section 5.5 of the partnership agreement, which provided that "no partner shall be entitled to demand a refund or return of any part of its capital contributions to the partnership." According to plaintiff, that provision prohibits the treatment of loans to the partnership as capital contributions.
 
 
 18
 The trial court found that the interim loan by Johnson to Amotex was a capital contribution of Johnson & Sirna to the partnership, implicitly rejecting plaintiff's interpretation of section 5.5 of the contract. Apparently finding the contractual provision inapplicable or vague, the trial court looked to New York Partnership Law § 40, which treats contributions in the form of capital or advances equally. Plaintiff cites no authority to the contrary.
 
 
 19
 Although section 5.5 of the parties' contract appears to prohibit treating capital contributions like advances, the contract does not explicitly address what may constitute a capital contribution, but merely addresses the return of capital. The contract also provides in section 5.4, however, that the parties would not be required to make capital contributions or loans to the partnership above the $80,000 contribution of each party as required in sections 5.1 and 5.2. To the extent that Johnson covered all of the expenses of Amotex without regard to the amount required to do so, his treatment of those payments as loans does not appear to be inconsistent with the contract or prohibit the treatment of any of those payments as capital contributions. Therefore, the trial court's determination is supported by the evidence.
 
 
 20
 C. Defendants made a capital contribution to the partnership in the amount of $166,031 in partial satisfaction of the partnership debt of $191,050.
 
 
 21
 The trial court found that throughout the life of Amotex there were revenues of approximately $224,000, with costs of operation of $413,050, resulting in a net loss of $191,050. The trial court further found that of the $191,050, defendants paid $166,031 and plaintiff paid $25,019. These findings were made based on entries by Johnson in the Amotex ledger, and were corroborated by copies of checks which were offered into evidence.
 
 
 22
 Plaintiff contends that the determination of Amotex's costs of operation was clearly erroneous, and, therefore, the alleged net loss of Amotex was also in error. Again, plaintiff points to the 1988 Federal Partnership Return, prepared by Johnson's accountant, which showed no revenue or expenses for Amotex during that year. Plaintiff alleges that the 1989 partnership return shows gross receipts of $137,624, total deductions of $77,611 and ordinary income of $50,040. Based on these figures, Amotex did not suffer a loss at all.
 
 
 23
 While the evidence regarding Amotex's losses and the amounts paid by defendants on behalf of Amotex is in conflict, the trial court made an explicit finding which we may only reverse for clear error. We conclude that the trial court's election to rely on the ledger entries of Amotex and the check copies was not clear error. Therefore, we affirm the district court's finding.
 
 
 24
 D. Amotex lost profits in the amount of $139,532 as a result of Patex's withdrawal from the partnership.
 
 
 25
 The trial court found that Tumteks refused to fill Amotex's outstanding orders because of plaintiff's withdrawal from the partnership in May 1989. As a result of Amotex's inability to fill the orders, the trial court found that the partnership lost profits in the amount of $139,532. Therefore, the trial court held that plaintiff owed defendants $139,532 for identifiable lost profits to the partnership.
 
 
 26
 Plaintiff argues that there is no evidence to support the trial court's conclusion that Tumteks refused to fill Amotex's orders as a result of plaintiff's withdrawal from the partnership. Plaintiff submits that the evidence shows that Tumteks refused to honor the letters of credit from Target and K-Mart because they were domestic, rather than international, letters of credit. Plaintiff alleges that based on this deficiency, Tumteks refused to deliver its textiles. Alternatively, plaintiff argues that the alleged lost profits are completely speculative.
 
 
 27
 It is undisputed that Tumteks' stated reason for refusing to fill Amotex's orders was that the letters of credit obtained by Amotex were not international letters of credit and that Amotex owed an outstanding balance to Tumteks. The district court implicitly found that these alleged reasons were pretextual and plaintiff's withdrawal from the partnership was the actual cause of Tumteks' refusal to perform. The trial court apparently based its finding on the close proximity in timing between plaintiff's withdrawal and Tumteks' refusal to fill Amotex's orders. This inference is also supported by the relationship between Panayirci and Tumteks.
 
 
 28
 The trial court's finding on this issue is supported by evidence in the record, although there is substantial evidence to the contrary. Given the clear error standard of review, we affirm the district court's finding in this regard.
 
 
 29
 E. Defendants are not liable to plaintiff for goods sold in the amount of $160,650.
 
 
 30
 Plaintiff argues that it was directly billed for the two deliveries of robes by Tumteks in 1988 to Amotex. Monies received from the sales of these robes by Amotex were paid to Johnson in repayment of his advances to Amotex. Plaintiff contends that he is entitled to payment by Johnson for the robes.
 
 
 31
 The trial court found that plaintiff was not entitled to payment for the robes delivered to Amotex. Johnson testified, and Amotex's ledger verified, that Amotex paid $50,000 of the $156,492 cost of the robes delivered in 1988. Allegedly, the $50,000 was in settlement of the entire amount due Tumteks, although there was evidence that Tumteks continued to seek the payment from Amotex. In any case, the trial court found plaintiff's claim that Tumteks was seeking the remaining $106,492 directly from plaintiff "highly dubious." The trial court's determination is supported by the evidence.
 
 
 32
 F. Plaintiff was liable to defendant Johnson for management fees.
 
 
 33
 Finally, the parties' partnership agreement provided for monthly management fees to Johnson in the amount of $5,500, for a total amount earned of $55,000. The agreement also provided for monthly management fees to Sirna in the amount of $2,500, and Panayirci and his wife each in the amount $1,000. Amotex did not pay those fees to Johnson or the Panayircis, but instead accrued them for later payment. In computing the total amount due Johnson for his contribution to Amotex, the trial court held that plaintiff owed $27,500, or one half of $55,000, to Johnson toward his management fees.
 
 
 34
 Plaintiff contends that it should not be required to pay $27,500 to Johnson for management fees. Plaintiff again claims that there was no binding partnership agreement between the parties for the period between August-December 1988 for which it is required to pay management fees. Even if there was a binding agreement in 1988, plaintiff claims that the reflection of no profits on the 1988 partnership return, or, alternatively, Johnson's representation as the sole proprietor of Amotex, precludes him from recovering management fees for that period.
 
 
 35
 The trial court again rejected plaintiff's claim that a partnership did not exist from August to December 1988, or that Amotex made no profits during that period. As stated above, these findings are supported by evidence in the record and are not clearly erroneous.
 
 II.
 
 36
 For the above stated reasons, we AFFIRM the judgment of the Honorable Michael R. Merz, United States Magistrate Judge for the Southern District of Ohio.
 
 
 
 *
 The Honorable Richard A. Enslen, United States District Judge for the Western District of Michigan, sitting by designation